## WESTERN UNION TELEGRAPH CO. *v.* THE STATE OF TENNESSEE AND COUNTY OF SUMNER.

TELEGRAPH LINES. *Taxable.* Telegraph lines are considered as partaking of the nature of realty, in analogy to the new doctrine that railroads and rolling stock are so treated, and consequently under the act of March 24, 1875, such property is held by the court liable to State and county tax, notwithstanding it also pays a privilege tax.

### FROM SUMNER.

Appeal from the Circuit Court at Gallatin. Judge J. C. GUILD, presiding.

W. S. MUNDAY for plaintiff in error.

No counsel marked for defendant in error.

MCFARLAND, J., delivered the opinion of the court.

The only question in this case is, whether the line of telegraph owned by plaintiff in error is subject to State and county taxes, as other property in the county of Sumner. The general question to be decided will be as to whether telegraph lines, as property, are now subject to taxation under our laws, this particular case being brought, as we understand, to test the question.

By the Constitution of 1870, art 2, sec. 28, all property, real, personal or mixed, shall be taxed; but the Legislature may except such as may be held by

the State, by counties, cities or towns, and used exclusively for public or private corporation purposes, and such as may be held for purely religous, charitable, scientific, literary or educational purposes, also $1,000 worth of personal property in the hands of each tax-payer. etc. It is ordered, all property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State." By the act of March 24, 1875, it is enacted in pursuance of the imperative mandate to the Legislature, that all property shall be taxed, with the exception laid down in the Constitution specified. By the Constitution, and this law, all property with the exceptions specified, is to be taxed. It is however to be taxed according to its value, that to be ascertained in such manner as the Legislature shall direct, so that the taxes shall be equal and uniform throughout the State. The only question then is, does the system, under which the value of our property is to be ascertained, furnish the means of ascertaining the value of a telegraph line, running through a county? if so, then its taxation follows as a matter of course. It is property; it has a local *situs*, which may be readily ascertained, so far as the line is concerned, is affixed to the soil, and its cost and value may be readily ascertained, we think, with approximate certainty, sufficient for all practical purposes of taxation, absolute certainty in value and equality being a thing probably unattainable by any system.

We treat the telegraph line as partaking of the nature of realty, in analogy to the now settled doctrine that railroads and rolling stock necessary to their use, running alone on their tracks, are so treated. We are aware that this is not strictly within the definitions of realty, as found in the ancient common law, but those definitions were formed in a ruder age than this, and must be accomodated to the advance of the age by sound analogies, as demanded by the exigencies of our diversified development; with this assumption, we look to the act of 1875, March 23d, providing for the assessment and collection of revenue, to see if this property may fairly be assessed and its value ascertained for taxation. It is there provided for the election of a tax assessor to assess and list all the real estate in his county. He is, by the second section of the act, to prepare a list of all taxable real estate in each civil district or ward of his county, then select in each district, with taxable realty worth less than $200 by last assessment, two reputable, prudent and discreet freeholders, residents therein, who, being sworn impartially to perform their duties, in connection with himself, are to assess and value all such property, and prepare a list of the same." Other provisions regulating the details of the proceeding need not be noticed.

We think it clear that all this may be done as to a telegraph line, as well as any other property, locally situated in each civil district, including instruments, etc., attached to and making up a part of a complete line of telegraph fitted for use as such. We

can see no need for the Legislature providing any
special or arbitrary mode for ascertaining how such
property shall be assessed. Nor would it be proper
to affix any arbitrary valuations upon it. Its real
value is to be ascertained as other property, and is
taxed upon the same principle. In fact, to fix any
arbitrary mode for assessing or ascertaining the value of
property of the kind would not be in accord with the
spirit of the Constitution, as probably tending to make
an arbitrary result, not the real one, that is, the true
value of the property, which is what was designed by
the Constitution. The same principle applies to former
modes of assessment before the act of 1875, here referred
to, the particular mode of ascertaining the value by a
general assessor and freeholders, being the only essential
difference. We think this the best solution of this
ques-tion. We cannot assume the Legislature have failed
to obey the mandate of the Constitution, requiring
all property to be taxed, if what they have enacted
may be made to reach the end designated. We think
we have shown that our law may be strictly pursued,
and this property onerated with its fair share of the
burdens of government. We find no exceptions in
its favor—none, in fact, is authorized by the Constitu-
tion, or by the act of 1875. We do not feel called
on to make one in favor of this corporation, unless
compelled by law so to do. We think no such com-
pulsion exists. This company, as others do, pays a
privilege tax, on privilege of telegraphing, of four mills
on every $100 in gross receipts, by the act of 1871.
This, however, cannot affect the liability of the property

Telegraph Co. *v.* State and County.

owned by the company to taxation as property. The privilege is one thing, the property owned by the party having the privilege another, each of which may be taxed, the one as privilege the other as property, according to its value, as provided by the Constitution.  We therefore conclude this property is subject to taxation as such.  As to the privilege tax, we need not examine the liability of the company to its payment, as it is not in question in this case.

Nor do we deem it necessary to examine the statute to see if the county judge has pursued precisely the proper mode of assessing this property in this case;  we settle the principle, and the details can be adjusted by counsel in the judgment.

Affirm the judgment.

McFARLAND, J :   I do not concur.   I think the Legislature has failed to take neccessary steps to authorize the collection of the tax.